We now proceed to the next case, Johnny Bullock v. Workers' Compensation Comm'n 511-0307. Counsel, please. May it please the court, Mrs. Introvalle. My name is Bruce McSaw and I represent John Bullock. At arbitration, Mr. Bullock was awarded 10% of a man. The commission reversed the arbitration decision with the failure to prove that he developed pneumoconiosis or COPD from his work for Consolidate. It specifically found that, based on a threshold finding, all other issues were moot, and the circuit court affirmed that commission's decision. For the last three weeks, as I'm preparing for this argument, I keep going over it, and every time I do, I hear the voice of Justice Hoffman or Justice McCullough saying, if you couldn't convince Commissioner Sherman or Commissioner Rink, how do you think you're going to convince us? And that's a substantial hurdle. That's kind of a preemptive strike. It's a big hurdle, but we're not trying to... He's been saying a lot about Commissioner Mason. If you can't convince her, how can you convince us? I'm going to do my best. All right. It's a huge situation, and when I look at the commission's decision, the commission did do one thing right. They were wrong in terms of the outcome, but they wrote the decision in the right way. They allowed for single-issue, single-basis argument. The only issue on the table was whether there was a work-related disease, and the only question on that issue is whether the treatment records by themselves can rule out any work-related disease. The two diseases under consideration are pneumoconiosis and COPD. Mr. Bullock only needs one to win. It doesn't make any difference which one it is. The commission decision is wrong on both diseases, but the COPD decision is the one most likely to fail the manifest weight test. Under the circumstances of this case, the arbitrator's decision, 10%, was in the right range. This isn't a total disability or wage differential case. As to the testimony of the two experts, the commission makes it clear that that wasn't what decided this case. It was the treatment records. Now, while that's true, that doesn't mean that the testimony of the experts don't have anything to do with the outcome. The commission can't and shouldn't look at the treatment records and arrive at their own medical conclusion based on evidence that isn't in the records. They aren't doctors, and that's not their job. They have to have some basis for knowing what the diseases are and what constitutes the evidence that will lead them to their decision. In this case, there's no reasonable basis in the record for the commission's decision, and there's plenty of evidence for the opposite conclusion. I'm going to start with the COPD, and here's the question. After the petitioner has proven that there is some level of likelihood that the disease is related to his work exposure, when does the burden shift to respond and to show that there was absolutely no causative effect of the COPD from coal mining? Well, can we stop you right there? Here it becomes, I can imagine her arguing, well, look, perhaps it can't be ruled out, but who has the burden to prove? I mean, does she have to disprove it, or do you have to prove it? I think that's the very middle of this whole case, particularly in light of a disease like COPD, the requirements of the Occupational Disease Act, and the evidence that's presented. And with your permission, I'll work through that as I go along here. Because I know that the claimant has the burden, but the burden isn't a flat, still picture when you're talking about COPD, coupled with the requirements of the Act. It's more like a kaleidoscope. The legal burden's the same, but the actual burden is a lot less. He doesn't have to prove it's more likely than not that the majority of the COPD was caused or aggravated by mining. He's only got to prove that there was 1% cause or 1% aggravation from mining, any contribution. So at some point, it becomes the burden of the respondent or its witnesses to prove that there was no contribution, zero contribution, in order for the claimant to miss his burden. What did Dr. Tudor say? Dr. Tudor said he had an obstruction. Very simple chronic bronchitis associated with minimal obstructive abnormality and no impairment of gastric change attributed solely to the claimant's history of smoking. That's a bold statement, very much like the one that was in the William Gross decision that we did in 2011. And that's my point. It has to have a basis. It must be based on something, and that's what's missing in this record. He reviewed the medical records. You've got two B-readers that, as usual, can't agree with each other. You've got Gil, who can't say one way or another. It's possible. Everything's possible with Gil. Could also be a pulmonary embolism, according to him. Then we go to Wyatt, who he notices various abnormalities in the lungs. He attributes none of them to CWP. You've got Alexander, who, of course, finds that he suffers from CWP. The two B-readers that never agree. You've got Kahn, who totally disagrees with Tudor. Kahn says yes for COPD, yes for CWP. Tudor says none of it. It's only smoking. So why would the commission be wrong, no matter which direction it went in? The first thing I need to say is that you were talking about CWP and COPD. We understand that, but what did Tudor say? Tudor said his condition, meaning pulmonary obstruction abnormality, which would be both CWP and COPD, had nothing whatever to do with anything but smoking. But in my opinion, he has to go further than that. There has to be a basis for that opinion. Hold on. You say, but didn't he examine all of his medical records and base his opinion based on pulmonary function testing? Well, okay, I need to go back to this first issue of pneumoconiosis versus COPD. As I told you, the COPD is the one that I'm most likely to prove to you that the burden has been met. The pneumoconiosis is very hard, because as long as there's one x-ray that's negative, I guess the commission gets to make that decision. It's a lot harder. But with the COPD, the problem is you have to prove that there was no contribution at all to the mining, or the miner wins. There comes a point, you know, the miner doesn't have to prove 100% or 80% or 30%. You've got to prove any contribution, 1%. So that when the commission says, rules against the miner in the COPD, they're saying there was zero contribution. And all we have from Dr. Tudor, despite what he read, is a ball of assertion. And that's kind of what we had in the William Gross case, where Dr. Wren, all Dr. Wren did was the medical records review. So he reviewed all the records, and he said, well, you know, I can tell the difference in smoking from coal mining for obstructive disease. As I read this, the only one that you've got that even says he has COPD is Kahn. Well, that was going to be my question. Nobody else found him with COPD but Kahn. Aren't there medical opinions in this case that he does not have COPD? As I read the commission decision, the argument was what caused the COPD. Now, there are treatment records that have the COPD. Dr. Kahn had the COPD. When Dr. Tudor found chronic bronchitis, that is a COPD. I don't see how we cannot have COPD. But what he says here, he said, yeah, he's got chronic bronchitis associated with minimal obstructive abnormality attributed solely to smoking. So can smoking cause chronic bronchitis? Or are you saying there's a medical effect it can't cause? Can we walk through that door one step at a time? He first says he's got a minimal obstruction. He's got chronic bronchitis, so he's got COPD. That's what I've got established to start. Now, the next question is, can he say it's solely due to smoking? Let's go through what he said. He said that pulmonary function testing won't tell you what caused it. It will tell you whether it's obstructive or obstructive and how severe, but not what caused it. Blood gases won't tell you what caused it, only the level of impairment. This is all what Dr. Tudor said. And he said obstructive defects can be multifactorial in cause, and they can be aggravated by one exposure, even though they weren't caused by it. Let me start. Look, Tudor examined x-rays from 2004, 2005, his chest x-rays, found no signs of cold-related lung impairment. Kahn comes up with COPD and CWP, and at cross-examination, admits that he never even reviewed the guy's medical records before June 21st, 2005. I mean, when Dr. Tudor looked at the x-ray, it has nothing to do with the question of COPD. When he said there was an obstruction and there was chronic bronchitis, he said there was COPD. In his testimony, he said that coal mining can produce a clinical picture that is indistinguishable from smoking or COPD. He got all the authorities in the record, the American Thoracic Society, NIOSH, the Department of Labor, all saying that the risk from smoking and the risk from coal mining is the same. So that, once you admit, once you get in the door and say, okay, the guy's got COPD, and I'm not talking about pneumoconiosis anymore, I'm not talking about the x-ray, I'm talking about the COPD. Once you admit he's got it, what is the burden now of the petitioner? And the burden is to show some cause, and if the commission says, no, you lose, then what they have said is there's zero cause and zero contribution. Now, the only thing in this record is if Dr. Tudor says it's solely, and he has nothing to back it up. The fact that he looked at the records, I don't, you know, I mean, he's got to have a reason for it. And in fact, in all his testimony, he goes about explaining why you can't tell this from one instead of the other. So he says at the cellular level, when you have COPD, it's the same. It looks exactly the same, whether it's caused by cigarette smoke or from mining. I'm sorry to keep asking this, but were there any medical claims in this case that he did not have COPD? In other words, is there anything from which the commission could have concluded that there was a figure to prove that he had COPD? I don't think so. What about Tudor? Tudor said he did have COPD. Tudor said it was not caused by coal mining. He said it was caused by smoking, period. Well, that's gross. That's the gross case. But there could be a distinction here if there was proof that he did not have COPD. If there was a proof he didn't have COPD, then I would have no case. But I don't see that proof. And again, I'm seeing the big pile of evidence. You know, like we talk about law school, two piles of evidence, who's got the biggest pile? I see all this evidence of the COPD related to mining. All I see on the other side is COPD. Where is all this evidence? Did Wyatt find COPD? Wyatt read the x-ray. He's a bee reader. He wouldn't find COPD. Did Alexander? No. He's a bee reader. He couldn't find it. What about Kahn? Kahn found it. Kahn found it. What's his specialty? He's a pulmonologist, is he not? Well, he's an internist. All right. What's Tudor's specialty? He's a pulmonologist. And he says, solely attributable to smoking. Did you strike it? Is there no value to that opinion? Why don't you have it stricken from the record? Because an opinion has to have a basis. He has a basis. He examined this guy's records, 2004, 2005, all the x-rays. Kahn never even looked at them. And he turns around and says, solely attributable. And we know this guy's being treated for heart problems. He's an excessive smoker. And you want to hang this on Kahn's opinion he has COPD? You know, again, I don't understand why we're arguing. Mr. Mussorri, this has to be the weakest case I've ever seen in black people. Well, if he's got COPD. You're saying if he has COPD, it necessarily has to be caused by coal mining, unless the defendant can prove it wasn't. No, I'm saying that it's like a light switch. It's on or off. Either it had something to do with it, however small, or it had zero to do with it. And I'm saying that under this record, the zero is a lot harder to prove. What I'm saying is the COPD has to have a cause. It has to have a cause. Now, what does Kahn say the cause of the COPD was? Smoking and mining. Well, he didn't say smoking and mining. Let's get back to what he actually said. He opined that a claimant's exposure to coal mining dust contributed to both conditions, and then admits that COPD also attributed to his smoking. That's what Kahn says. Tudor turns around, and if you want to say he admitted the guy had COPD, that's fine. He had a simple chronic obstruction caused solely by smoking. So you've got Kahn saying it's caused something by coal mining, and Tudor saying not caused by coal mining at all. And the commission makes a decision and says, this time we're going along with Tudor. It could have gone either way. There's no question about that. My point is that there must be a basis. And even in Tudor's testimony, he says there is no basis. There is no objective testing. In fact, that's one of the things that the commission said about objective testing, proving you didn't have pneumoconiosis. There is no objective testing here that would say it wasn't from mining, at least in part. But whose burden is it to say it was? All right. Your time is up. You'll have time on rebuttals. Thank you. Counsel, please. Police report. Mr. Buzor. My name is Cheryl Entreville. I'm representing the Consolidation Coal Company. Very briefly. Can I ask a question? Absolutely. Did all the medical experts in this case agree that he has COPD? Dr. Tudor's pulmonary function studies were within the range of normal. They were 97% and 91%. He did find that it was a mild obstructive condition. However, he opined that the mild obstructive condition was related to his 38 years of smoking and not from his mining. Does that mean he has COPD? Does that mean Tudor said he has COPD? Yeah. I mean, he diagnosed mild COPD. So all the medical experts agreed that he has COPD, right? Correct. So he worked in the coal mines for over 30 years. He smoked for over 30 years. How is this case any different than Gross? That's the exact scenario we had in Gross when we reversed the commission and said, you know, I mean, just because an expert says, well, this is only based on his smoking. Well, how can he tell that? What's his explanation in the record? The case is distinguishable from Gross because you have three different files. If you read the commission decision, they don't even address Tudor. Tudor's not even brought into the equation. They're trying to find evidence that will support a finding of an occupational disease, which is the petitioner's burden. They come right out and say, we do not find Dr. Kahn's opinion persuasive. Well, he's gone. Okay, we'll leave him over there with Tudor, which leaves you with the medical records. And they go through all of the medical records, and they have them saying, this one's related to smoking, this one's related to the cardiac, and we don't find this is sufficient evidence to make a finding of an occupational disease. So what you're saying is the commission's decision is just based on the failure of proof, period. Absolutely. It was their burden to prove. I mean, obviously, yeah, because obviously Dr. Tudor didn't find that it was related to Tudor. Wait, wait, wait. COPD can be an occupational disease. Yes, it is. There's absolutely no question about that. That is correct, John. But it isn't always an occupational disease. That is correct. Just because it could have been caused by coal mining or could have been caused by smoking doesn't mean that you had a burden to prove it wasn't caused by coal mining. He's got a burden of proving that it was. Correct. And if there's evidence that it was and there's evidence that it wasn't, and the commission turns around and says, failure of proof, where are we going on Manifest Way? Well, and that's exactly the point. This was an issue of which evidence they wanted to rely on. This is exactly why we have the commission. They have found numerous times that Dr. Tudor's opinion wasn't as good as Dr. Hauser's or anybody else's. That is a critical finding with a conflict of evidence which is in their province. In this decision, they found the evidence did not support that decision. Without even going there, and I didn't even want to get into the whole COPD thing, the other problem with this case from Rose is that we have a statute of limitations, and you get five years to file a case for CWP. This case was filed three and a half years after he left the mine. It was too late to file a claim for COPD. The only thing Mr. Bullock can get any benefits on is CWP. So to spend all this time on COPD isn't really productive. And even if you want to spend it all on COPD, if you looked at the conflict in the evidence, which is essentially what we have here, which is Tudor saying, fine, he has it, but it's smoking. We have the medical records with numerous reasons as to why it comes about. And we have Dr. Kahn. The commission doesn't address Dr. Tudor, which completely is in line with the opinion. They throw out Dr. Kahn and leave him with the medical records. And that's what they looked at. And if the medical records had said over and over and over, COPD due to coal mining, I'd be sitting over there and he'd be sitting over here. And that's just what their job is. And there's no error of law. There's no issue other than we want to reweigh this and decide that it's COPD, and I now have to rule it out. That's not how the burden works. And so we're asking for the commission's decision to be applied. Thank you. Hello. I only have one question. Don't you have to prove it was from coal mining? Isn't that part of your burden? I must. Okay. But that burden is shaped by the totality of what we have. Well, no, but you seem to be arguing as soon as I prove he has COPD, the burden shifts to the defendant. No, that's not exactly what I'm saying. I'm saying that when we know he has COPD, now we have a question on our hands, is it in any way 1% aggravated, 1% caused by it? But you have to prove it. Well, there's part of it. How do you prove it? Well, at what point does it turn over? At what point does it, you know, you say, okay, we've got mining can cause it, the mining can aggravate it. We know that. There's plenty of evidence here in the record. At what point does it become almost ridiculous to say it could have nothing to do with it, it could have zero contribution? When you have one expert that says it has nothing to do with it and another one that says it does, it occurs to me that the commission settles that argument. Again, it's awful it is to stand here and argue with you about this. I go back to the William Groves case, which was so similar. In that case, Dr. Wren, for the coal company, all he did was look at records. He had all the records. He said, I can tell you the difference between obstruction caused by smoking and mining. You can tell it by the pattern on the pulmonary function test. I asked him, when you talk about that pattern, are you talking about pneumoconiosis or COPD? He says, pneumoconiosis. He had the wrong disease. So the problem was not that a doctor can't say it's solely caused by it. It's just they have to have a reason. They have to have a basis for that opinion. And that's what I'm saying is the flaw here. The commission had no basis to say zero contribution. Tudor gave you no basis for zero contribution. And while I have a burden, again, to kind of repeat, I don't have to prove that the COPD was caused in a majority fashion. No, you have to prove it was somehow caused by coal mining. That's all. They've thrown out Kahn. They've thrown out Jerome the expert that gave you COPD based on coal mining. They threw him out. They didn't believe him. May I say they also threw out three treating doctors who found black lung? Dr. Gill, Dr. Gibbs, and Dr. Connors. They get to do that too. Those are all things that I think push the ball back further into my court. So that what I'm saying is whether you're talking about Dr. Tudor or you're talking about the commission, it takes more than a ball of assertion. It takes a reasoned basis for that opinion. And there isn't one here except Dr. Tudor saying, oh, solely from smoking. He's always said that. And when I question that burden of proof, a burden of proof requires you to look at both sides of the coin. Yeah, I have to put it on the table. And it has been with the American Thoracic Society, NIOSH, the Department of Labor. Even in the treatment records with three doctors saying black lung, it's on the table. Now somehow it has to get swept off. And it's the sweeping off that is against the manifest way to the evidence. The sweeping to zero is against the manifest way to the evidence. Because they go to the treatmenters. There's nothing in the treatment records that says it's solely from. There's nothing in the treatment records that says he's even got COPD, other than Kahn. I beg to differ, Your Honor. There's not a single thing in there other than Kahn. What was he treated for all those years? Heart disease? Inability to breathe? Smoking for 38 years? Where in those records does it say that he's got COPD? I can only work with the commission overlaid on that. And the commission said his problems were from heart and smoking. Okay, when we say smoking, what do you think that means? That's the pulmonary. That's his lung problem. That's the COPD. And COPD is in that treatment record. And I wish I could cite it for you right now, but it's in the commission decision where they talk about the COPD being diagnosed in those treatment records. His smoking problem, pulmonary problem from smoking has been diagnosed. We know that. But, see, my point is they can say that smoking is a causative factor, we're worried about the smoking, smoking is bad for him, and I agree with every one of those statements. But the question is when you've got over 30 years of coal mining, 30 years of smoking, how do you rule that out? And all I need from Dr. Tudor, and I'm not saying that I can't be. You want us to write an opinion that says as a matter of law, if a man works in a coal mine for 35 years and he smokes for 38 years and develops COPD as a matter of law, coal mining has something to do with it. No, sir. That's what you want us to say. No, sir. What I'd like you to say is in this case it wasn't proven. In another case, a hypothetical use. We'll take the matter under advisement for disposition. And we'll recess until 9 o'clock in the morning.